# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

PW, a minor, by DOMINQUE
WOODSON, his mother and guardian,
and DOMINQUE WOODSON,
individually,

        Plaintiffs,

        v.

UNITED STATES OF AMERICA and
ANONYMOUS HOSPITAL,

        Defendants.

CAUSE NO. 2:17-CV-407-TLS

## AMENDED OPINION AND ORDER[1]

This matter comes before the Court on Defendant United States of America's Motion to Dismiss for Failure to State a Claim or Alternatively Summary Judgment [ECF No. 21] in this action brought by Plaintiff Dominque Woodson individually and on behalf of her minor son, Plaintiff P.W. The Plaintiffs filed a response [ECF No. 26] on May 31, 2018. On June 28, 2018, the Defendant filed a reply [ECF No. 30]. Lastly, on July 3, 2018, the Plaintiffs filed a sur-reply [ECF No. 32]. For the reasons stated below, the Court GRANTS the Defendant's Motion to Dismiss for Failure to State a Claim or Alternatively Summary Judgment [ECF No. 21].

## STATEMENT OF FACTS

The central question presented in the Defendant's motion is whether the statute of limitations for the Plaintiffs' Federal Tort Claims Act ("FTCA") bars the Plaintiffs from

---

[1] This is an Amended Order reflecting that judgment is to be entered against only Defendant the United States of America, and not against Defendant Anonymous Hospital. The reasoning and procedural history behind this amendment is reflected in the Court's initial Order addressing the matter [ECF No. 46], and the Court's second Order which will be released contemporaneously with this Amended Order.

recovering for injuries that occurred during Dr. Keith Ramsey's delivery of Ms. Woodson's son, P.W., on December 7, 2013.

## A.    Dr. Ramsey and NorthShore Health Centers

Prior to August 2005, Dr. Ramsey was in private practice in the fields of obstetrics and gynecology. In August 2005, Dr. Ramsey began his employment with NorthShore Health Centers ("NorthShore"). When Dr. Ramsey started his employment with NorthShore, he limited his private practice to gynecology. He ceased delivering babies through his private practice. Pls.' Resp. to Mot. to Dismiss or Summ. J., Ex. E, Dr. Ramsey Dep., 14–16, 62–64, ECF No. 26–5.

NorthShore is deemed eligible for FTCA malpractice coverage and has been so at all times relevant to underlying facts of this action. *See* Def.'s Mem in Supp. of Mot. to Dismiss or Summ. J., Ex. H, Hicks Decl., ¶¶ 6, 8, ECF No. 22-8. Both NorthShore and Dr. Ramsey, as a NorthShore employee, are characterized as employees of the United States with respect to any tort actions seeking money damages for personal injuries resulting from alleged medical negligence. *See id.*

## B.    December 7, 2013 Delivery of P.W.

During her pregnancy, Ms. Woodson was treated by Dr. Ramsey at NorthShore. While providing Ms. Woodson prenatal treatment, Dr. Ramsey informed Ms. Woodson that her baby was large and that he would likely need to perform a C-section at the time of delivery.

On December 7, 2013, Ms. Woodson went to Anonymous Hospital to give birth. Ms. Woodson described the delivery as "very traumatic." Pls.' Resp. to Motion to Dismiss or Summ. J., Ex. A, Woodson Aff., ¶ 13 ECF No. 26-1. Despite Ms. Woodson requesting a C-section

during the delivery, a C-section was not performed. At one point during the delivery, P.W. "got stuck on the way out" and "Dr. Ramsey yanked P.W. out with great force." *Id.* at ¶ 13.

When P.W. was born, Ms. Woodson noticed that P.W.'s "left arm just sagged down to his side" and that he "could not move his left arm at all." *Id.* at ¶ 14. Also, "[s]hortly after the delivery," Ms. Woodson "knew something was wrong with P.W.'s left arm, so [she] asked Dr. Ramsey what happened to his arm." *Id.* at ¶ 15. According to Ms. Woodson, Dr. Ramsey responded by saying that P.W. "may get better" and he "may grow into it." *Id.* at ¶ 15.

**C.    Retention of Counsel and Malpractice Claim**

After follow-up visits with Dr. Ramsey and other healthcare providers over the course of the next several months, Ms. Woodson retained Attorney Walter Sandoval on May 30, 2014, to litigate her and P.W.'s claims against Dr. Ramsey, NorthShore, and Anonymous Hospital. Ms. Woodson provided Attorney Sandoval with "some records from NorthShore and Anonymous Hospital." Pls.' Resp., Ex. B, Sandoval Aff. ¶5, ECF No. 26-2. According to Attorney Sandoval, the records he reviewed did not identify NorthShore as a federal clinic, Dr. Ramsey as an employee of NorthShore, nor Dr. Ramsey as a government employee in any capacity. *Id.*

After Attorney Sandoval reviewed the records provided by Ms. Woodson, he reviewed records in the public domain, and still did not learn that Dr. Ramsey was a federal employee or that NorthShore was a federally funded clinic. Attorney Sandoval reviewed the websites of the Indiana Department of Insurance ("IDOI") and the Indiana Patient's Compensation Fund ("IPCF") to determine if Dr. Ramsey was a "qualified" healthcare provider under Indiana's Medical Malpractice Act ("Indiana Act"), Ind. Code. § 34-18-1. Sandoval Aff. ¶¶ 6–7. Attorney Sandoval learned from these websites that Dr. Ramsey was qualified under the Indiana Act.

Moreover, these websites indicated that Dr. Ramsey had been a named defendant in twenty other complaints filed with the IDOI. *Id.*

Attorney Sandoval also searched Dr. Ramsey's independent website, NorthShore's website, and the U.S. Public Health Service's website. Attorney Sandoval attests that "[n]one of these websites indicated at any time, to [his] knowledge, that Dr. Ramsey was an 'employee' of NorthShore, that he was a 'government,' or federal employee, or that he could only be sued in federal court pursuant to the [FTCA]." *Id.* ¶ 8.[2] Furthermore, Attorney Sandoval was unaware that Dr. Ramsey was an employee of NorthShore, as NorthShore did not list him as an "employee," even though it listed him as a "doctor" at NorthShore. *Id.*

Specifically, regarding Attorney Sandoval's knowledge of NorthShore's status as a federally funded clinic, Attorney Sandoval was unaware of NorthShore's federal status as NorthShore's website did not indicate it was an "FTCA Deemed Facility" when the Plaintiffs retained him. *See id.* ¶¶11-12. Importantly, however, the NorthShore website did have a logo on its webpage, during the relevant time, that reads: "Community Health Center FQHC."[3] *See* Pls.' Resp. to Mot. to Dismiss or Summ. J., Ex. C, Kowalski Aff., 3–4, ECF No. 26-3.

On December 18, 2014, the Plaintiffs filed a proposed complaint against Dr. Ramsey and Anonymous Hospital to the IDOI and the IPCF pursuant the Indiana Act. Under the Indiana Act, a malpractice action may not be commenced against a qualified healthcare provider until a proposed complaint has been filed with the IDOI. Ind.Code. §34-18-8-4. On January 1, 2015, and October 26, 2015, the IDOI informed the Plaintiffs' counsel that Dr. Ramsey was a qualified healthcare provider under the Indiana Act when he treated Ms. Woodson. Sandoval Aff. ¶¶ 18,

---

[2] Attorney Sandoval's affidavit is silent on whether he reviewed these websites to determine if NorthShore was a federally affiliated health center.
[3] FQHC is an abbreviation for Federally Qualified Health Center.

23. Also, on October 26, 2015, Plaintiffs' counsel received written notice that IDOI informed Dr. Ramsey's insurance carrier, IRMIA, that Dr. Ramsey was a party to the IDOI action. *Id.* at ¶ 24.[4]

On December 16, 2015, a little over two years after P.W.'s delivery, Peter Boyles, counsel for NorthShore, informed Attorney Sandoval that NorthShore is a federal clinic, and that Dr. Ramsey, as an employee of NorthShore, is considered a federal employee. Sandoval Aff. ¶ 25. Subsequently, on February 19, 2016, the Plaintiffs, through Attorney Sandoval, filed their tort claim with the Department of Health and Human Services ("DHHS") pursuant to 28 U.S.C. § 2675(a). *Id.* at ¶ 27. On May 1, 2017, Attorney Sandoval received DHHS's written denial of the Plaintiffs' tort claim. *Id.* at ¶ 30. The Plaintiffs' filed the instant action pursuant to 28 U.S.C. § 2675(a) on October 26, 2017. *Id.* at ¶ 31.

## LEGAL STANDARD

The Defendants have moved for dismissal pursuant to the Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Therefore, the Court must provide the legal standards for both and determine the appropriate standard to apply to the instant Motion.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. In considering motions to dismiss for failure to state a claim, "[courts] construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In ruling on Rule 12(b)(6) motions to dismiss, courts generally must confine their inquiry to the factual allegations

---

[4] Importantly, neither Dr. Ramsey nor Anonymous Hospital could be qualified providers under the Indiana Act and at the same time be considered federal employees for the purposes of the FTCA in connection with same allegedly negligent medical treatment. *See* 42 U.S.C. § 1346(b) (bestowing federal district courts with "exclusive jurisdiction" over FTCA matters).

set forth within the operative complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). "A plaintiff . . . must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo*, 526 F.3d at 1083 (quotation marks and citations omitted). Although a complaint does not need detailed factual allegations, it must provide the grounds of the claimant's entitlement to relief, contain more than labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–81 (2009) "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Determining whether a complaint states a plausible claim is context-specific, requiring a court to draw on its experience and common sense. *Id.* In addition, a plaintiff can plead himself out of court if it would be necessary to contradict the complaint in order to prevail on the merits. *Tamayo*, 526 F.3d at 1086.

When parties seeking dismissal submit documents with their motions to dismiss, courts can either exclude the documents or convert the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Under Rule 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

Here, the Defendant has already moved, in the alternative, for summary judgment under Rule 56, and the Plaintiffs have responded by framing their arguments within the Rule 56 framework. Additionally, the Plaintiffs have designated their own documents, including deposition testimony. Therefore, the Court will treat the Defendant's motion as a motion for summary judgment.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present a court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct

legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## ANALYSIS

The United States argues that the Plaintiffs cannot recover under the FTCA because the Plaintiffs filed their claims after the expiration of the FTCA's two-year statute of limitations period. The Plaintiffs counter with several arguments as to why the Court should find that the FTCA's statute of limitations does not bar the present action. First, the Plaintiffs appear to argue that the date of accrual was not the date of the delivery (December 7, 2013) but the date that Plaintiffs' counsel, Attorney Sandoval, learned that the injuries in question were the result of a "government cause"—and if not that date (December 16, 2015), then the date Ms. Woodson retained Attorney Sandoval (May 30, 2014). Second, the Plaintiffs assert that if the date of accrual was the date of P.W.'s delivery, then the "Savings Clause" of the Westfall Act, 18 U.S.C. § 2679, prevents dismissal on statute of limitations grounds. Lastly, Plaintiffs argue that the doctrines of equitable estoppel and equitable tolling apply such that the statute of limitations only began to run when Attorney Sandoval discovered that Dr. Ramsey was a federal employee.

### A.    FTCA

Under the FTCA, district courts have "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of this office or employment." 28 U.S.C. § 1346(b)(1). Such liability arises "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*

In order to institute an action against the United States under the FTCA, a claimant must first exhaust her administrative remedies by filing an administrative claim with the appropriate federal agency, 28 U.S.C. § 2675(a), and she must do so within the time provided by the two-year statute of limitations as set forth in the FTCA. 28 U.S.C. §2401(b). Section 2401(b) requires that the claimant file an administrative claim within the appropriate federal agency within two years of the claim accruing and file a complaint in the district court within six months of the denial of the administrative claim. *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) (citing 28 U.S.C. § 2675(a)).

Importantly, an FTCA claim accrues when "(A) an individual knows enough to tip him off that a government act (or omission) may have caused his injury, *or* (B) a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011) (emphasis in original). This standard allows a claim to accrue when either a plaintiff objectively should have known that a government cause resulted in an injury or when a plaintiff subjectively knew that a government cause resulted in an injury. *See Blanche v. United States*, 811 F.3d 953, 958 (7th Cir. 2016) (noting that the standard provides for "either a subjective analysis or an objective analysis."). "Further, medical malpractice claims [in the FTCA context] do not accrue when the plaintiff knows that her injury was caused by a doctor. Rather, the accrual date is when the plaintiff has enough information to suspect, or a reasonable person would suspect, that the injury had a doctor related cause." *Blanche*, 811 F.3d at 958 (internal quotations omitted).

The Plaintiffs appear to argue that date of discovery of the injury should be set at May 30, 2014 (when Ms. Woodson hired Attorney Sandoval), and the date the Plaintiffs discovered that the injury was the result of a government cause should be set at December 16, 2015 (when

NorthShore's counsel informed Attorney Sandoval of Dr. Ramsey's federal employment status). As will be explained more fully below, the date of the delivery (December 7, 2013) is the proper date to start the running of the FTCA's statute of limitations, not the potential dates Plaintiffs offer.

### 1. Discovery of Injury

The date of the discovery of the injury for an FTCA medical malpractice claim is when a person suspects, or a reasonable person would suspect, that her injury was caused by negligent medical care. *E.Y. ex rel. Wallace v. United States*, 758 F.3d 861, 868 (7th Cir. 2014).

The Seventh Circuit in *Blanche v. United States*, applied the above standard to a fact pattern similar to the facts in the instant case. The mother in *Blanche* endured a "difficult delivery" when her doctor induced labor as a result of abdominal pain. *Blanche*, 811 F.3d at 955, 959. During the delivery, the baby was lodged in the birth canal and had to be rushed to the intensive care unit after she was born. *Id.* at 955–56. While at the hospital, the mother learned her daughter was diagnosed with Erb's Palsy, which involves weakness in the arm as a result of damage to nerves in the area of the shoulder. *Id.* at 956. The mother left the hospital with her daughter's arm in a splint. *Id.* Although, the mother met with an attorney shortly thereafter to discuss filing a malpractice claim, she would ultimately hire a different attorney approximately a year later to pursue her and her daughter's malpractice claims. *Id.*

Similar to the parties in this case, the parties in *Blanche* disputed the date the injury was discovered. The district court in *Blanche* found that the mother had knowledge of the injury near the time of delivery because, in part, the mother knew that the baby was lodged in the birth canal during the delivery, that the baby was rushed to the intensive care unit after delivery, and that the baby was taken home with her arm in a splint. *Id.* at 959. The Seventh Circuit agreed, reasoning

that "[r]egardless of [the mother's] subjective beliefs, a reasonable person under the circumstances would have had enough information to inquire further into whether [the doctor performing the delivery] caused [the newborn's] injury." *Id.* Consequently, the statute of limitations began to run on the date of the delivery.

Similar to the mother in *Blanche*, Ms. Woodson also endured a "very traumatic delivery," as described in her affidavit. *See* Woodson Aff., at ¶ 13. In connection with the prenatal care Ms. Woodson received at NorthShore, Dr. Ramsey informed Ms. Woodson that she would likely need a C-section to deliver P.W. due to P.W.'s size. *Id.* at ¶ 8. During the delivery, however, a C-section was not performed despite Ms. Woodson requesting one. *Id.* at ¶ 10. Ms. Woodson attested that P.W. "got stuck on the way out" and that Dr. Ramsey "yanked P.W. out with great force." *Id.* at ¶13. She also observed "[s]hortly after the delivery" that "P.W.'s left arm just sagged down to his side." *Id.* at ¶¶14–15. Ms. Woodson explained that she "knew something was wrong with P.W.'s left arm" and that this prompted her to ask Dr. Ramsey about it. *Id.* at ¶15. Dr. Ramsey responded that P.W.'s arm "may get better and [P.W.] may grow into it." *Id.*

Based on Ms. Woodson's own affidavit recounting her harrowing delivery, Ms. Woodson knew on the date of the delivery that P.W. was stuck in the birth canal and that P.W. needed to be "yanked" out with great force. Ms. Woodson also knew that she did not receive a C-section despite being told during her prenatal treatment that a C-section was the preferred course of action. Finally, shortly after P.W.'s birth, Ms. Woodson observed that P.W.'s left arm "sagged down his side," which alerted her to the fact that "something was wrong." Taking these facts together, a reasonable person under similar circumstances as Ms. Woodson would have had enough information to inquire further into whether Dr. Ramsey's delivery of P.W. caused the injuries to P.W. and injuries to Ms. Woodson herself shortly after the delivery. Therefore, the

appropriate date to set as discovery of Ms. Woodson's and P.W.'s injuries is not the date Ms. Woodson retained Attorney Sandoval but the date of delivery, December 7, 2013.

### 2. Discovery of Government Cause

The Court next turns to whether the Plaintiffs knew or had reason to know that the injury was the result of a government cause. The Plaintiffs argue that the FTCA claim did not accrue until their counsel learned from NorthShore's counsel that Dr. Ramsey could be sued for malpractice only under the FTCA.

With respect to a plaintiff's knowledge of a government cause for the purposes of the FTCA's statute of limitations, the "the statute of limitations begins to run 'either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to *any suspicious circumstances* of which he might have been aware would have discovered the government cause—whichever comes first.'" *Arroyo*, 656 F.3 at 669 (emphasis in original) (quoting *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985)). Nevertheless, in *Artega v. United States*, the Seventh Circuit held that when a prospective plaintiff has knowledge of an underlying injury,  the "prospective plaintiff should be able to discover within the statutory limitations period the rest of the facts needed for drafting a complaint that will withstand a motion to dismiss." 711 F.3d 828, 831–32 (7th Cir. 2013). The court in *Arteaga* explained that whether or not "the defendant is suable only under the Federal Tort Claims Act is one of those facts" that a plaintiff or plaintiff's counsel should be able to discover within the statutory period after the underlying injury is discovered. *See id.*

Applying *Arteaga* to this case means that the Plaintiffs cannot prevail on the argument that the statute of limitations began to run once Attorney Sandoval learned that Dr. Ramsey was a federal employee. Under *Arteaga*, whether Dr. Ramsey is suable only under the FTCA is a fact

the Plaintiffs or Plaintiffs' counsel should have discovered after Ms. Woodson learned or should have learned of the injuries. That the Plaintiffs and Plaintiffs' counsel did not discover that Dr. Ramsey was a federal employee until after the statutory limitations period does not save the Plaintiffs' FTCA claim.

Thus, the statute of limitation began to run on December 7, 2013, the date of the delivery, and expired two years later, on December 7, 2015, which in turn is more than two months before the Plaintiffs filed the FTCA claim with DHHS on February 19, 2016. The Court will therefore turn to whether any exceptions to the FTCA's two-year statute of limitations applies to prevent dismissal of the Plaintiffs' claim.

**B.      The "Savings Clause"—28 U.S.C. § 2679(d)**

The Plaintiffs assert that the "Savings Clause" of the Westfall Act should apply to prevent dismissal of the FTCA claim on statute of limitations grounds.

The Westfall Act provides that a remedy against the United States under the FTCA is "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . ." 28 U.S.C. § 2679(b)(1). Furthermore, the Westfall Act states that "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter . . . is precluded without regard to when the act or omission occurred." *Id.* Subsection (d) provides for the automatic substitution of the United States as a party defendant in "any civil action or proceeding commenced upon such a claim in a United States district court" or in "any civil action or proceedings commenced upon such a claim in a State court . . . ." *Id.* §§ 2679(d)(1), (d)(2).

The FTCA contains a savings clause to prevent the dismissal of an action where the United States is substituted as a party after the limitations period has run. *Id.* § 2679(d)(5). The Savings Clause provides:

> Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if-(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

*Id.*

It is undisputed that the Plaintiffs filed the action before this Court within six months of DHHS's denial of the administrative claim. The issue in dispute, however, is whether the Plaintiffs can be deemed to have filed their administrative law claim within the two-year limitations period when the Plaintiffs filed the underlying malpractice claim with a state agency (IDOI), rather than a federal agency (DHHS) or state court.

The Plaintiffs contend that 28 U.S.C. § 2679(d)(5) is satisfied because the Plaintiffs initiated a malpractice claim with IDOI on December 18, 2014, which is well within two years from the date of the delivery. The Plaintiffs acknowledge that the IDOI claim is still pending, and therefore the second requirement of the savings clause cannot be met—the requirement that a claim be presented to the appropriate federal agency within 60 days after the *dismissal* of the civil action. The Plaintiffs propose circumventing this second element by suggesting that the Court find that the Plaintiffs have "substantially complied" with the Savings Clause.

The Plaintiffs do not provide any authority suggesting that a court can apply the full force of the Savings Clause after a finding that a plaintiff has "substantially complied" with the

requirements of the Savings Clause. Aside from that omission, the Defendant counters that the Plaintiffs cannot avail themselves of the Saving Clause's protection because the "underlying civil action" referred to in § 2679(d)(5)(A) does not encompass administrative claims filed with *state agencies*. Instead, the "underlying civil action" referred to in the savings clause is limited to civil actions in federal district court and civil actions in *state court*. To support their argument, the Defendant cites to *Adkins v. United States*, where Chief Judge Magnus-Stinson, sitting in the Southern District of Indiana, rejected a plaintiff's argument that the Saving Clause's reference to "underlying civil action" includes proceedings before state agencies. No. 1:10–cv–0018–JMS–DML, 2011 WL 666713, at *3–4 (S.D. Ind. Feb. 14, 2011).

This Court finds Chief Judge Magnus-Stinson's decision in *Adkins* persuasive—particularly, in the absence of binding authority on point. The court in *Adkins* invoked the well-known canon of statutory construction that provides that "statutory language cannot be construed in a vacuum" and that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.* at *4 (quoting *Davis v. Mich. Dep't of Treas.*, 489 U.S. 803, 809 (1989)). Accordingly, looking beyond subsection (d)(5) of the Westfall Act, subsection (d)(1) provides for the automatic substitution of the United States as a party in "any civil action or proceeding commenced upon such a claim in a United States District Court." Subsection (d)(2) provides for the automatic substitution of the United States as a party in "any civil action or proceeding commenced in a State court." It would stand to reason that Congress *would not* earlier in a statute reference two types of civil actions—those before a federal district court and those before a state court—and then in a later subsection, when referencing civil actions, intend to broaden the scope of civil actions to also encompass proceedings before state administrative agencies. In other words, "it is clear that Congress did not intend to introduce a

new form of civil action in § 2679(d)(5), different from those civil actions referred to in subsections (1) and (2) of the same statutory section." *Adkins*, 2011 WL 666713, at *4.

Importantly, as the court in *Adkins* highlights, the Supreme Court has instructed courts that the FTCA is to be construed narrowly and strictly. *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990)). Moreover, the Seventh Circuit has held that "[c]ourts should not extend the waiver beyond that which Congress intended." *Adkins*, 2011 WL 666713, at *4 (internal quotations omitted) (quoting *McCall v. United States*, 310 F.3d 984, 988 (7th Cir. 2002)). Specifically, in connection to the statute of limitations for an FTCA claim, the burden rests with the plaintiff to establish an exception to limitations period. *See McCall*, 310 F.3d at 987.

Taking together that exceptions to the statute of limitations for an FTCA claim are to be construed narrowly and strictly along with evidence that Congress did not intend "underlying civil actions" to encompass state administrative proceedings under § 2679(d)(5), this Court finds that the Savings Clause of the Westfall Act does not apply to the Plaintiffs' untimely FTCA claim.

**D.      Equitable Estoppel**

The Plaintiffs also assert that Dr. Ramsey and NorthShore took affirmative steps to conceal the fact that the malpractice claim could only be brought under the FTCA.

The Seventh Circuit has clarified that when a defendant is alleged to have taken "improper steps to delay the filing of the suit beyond the statutory period" then the issue "would be in the domain not of equitable tolling but equitable estoppel . . . ." *Arteaga*, 711 F.3d at 833. One such example of when equitable estoppel would apply in the statute of limitations context would be when "the defendant took improper steps to delay the filing of the suit beyond the

statutory deadline, as by falsely promising not to plead the statute of limitations." *Id.* A court will look to see whether the defendant's actions amounted to fraudulent concealment to determine whether equitable estoppel applies. *See id.* (stating that fraudulent concealment is "often used a synonym for conduct giving rise to [equitable] estoppel.").

The Plaintiffs contend that Dr. Ramsey and NorthShore deceived the Plaintiffs and Plaintiffs' counsel, Attorney Sandoval, into believing that the malpractice action against Dr. Ramsey was properly filed before the IDOI when in actuality Dr. Ramsey could only be sued under the FTCA in federal court. The Plaintiffs intimate that Dr. Ramsey had a duty to disclose information that he was a federal employee in connection with his treatment of Ms. Woodson and delivery of P.W. because there is a "fiduciary or confidential relationship" between Dr. Ramsey, a physician, and his patients. Pls.' Resp. at 16. The Plaintiffs imply that failure to disclose Dr. Ramsey's status as a federal employee "results in concealment" that would give rise to an equitable estoppel argument.

The Seventh Circuit in *Arteaga* rejected the Plaintiffs' exact argument. The *Arteaga* court confirmed that healthcare providers have no duty to reveal to their patients that they could only be sued for malpractice under the FTCA. *Arteaga*, 711 F.3d at 834. "No physician, clinic, hospital, or other medical provider is required to provide patients with detailed instruction on how to sue the provider for malpractice." *Id.* Hence, the Plaintiffs' argument that Dr. Ramsey and NorthShore refraining from disclosing their federal affiliations until after the statute of limitations expired amounts to fraudulent concealment pursuant is unconvincing.

The Plaintiffs also allege that that NorthShore and Dr. Ramsey, acting on behalf of the United States, "intentionally and willfully kept important employment documentation away from the Plaintiffs and their counsel." Pls.' Resp. at 16. In support of their allegations, the Plaintiffs

note that Attorney Sandoval only received Dr. Ramsey's part-time employment agreement with NorthShore, NorthShore's W-2 statement, and Dr. Ramsey's employment declaration after the Plaintiffs filed their tort notices with DHHS on February 19, 2016, which was after the statute of limitations expired. Pls.' Resp. at 17 (citing Sandoval Aff. ¶ 39).

The Court finds, however, that the Plaintiffs have not established that the Defendants fraudulently withheld the documents. As stated above, neither NorthShore nor Dr. Ramsey had a duty to aid the Plaintiffs in suing them in the correct forum. Additionally, the Plaintiffs have not submitted any evidence demonstrating that Dr. Ramsey and NorthShore had a duty to disclose the documents listed above pursuant to some court order or other obligation—apart from the obligations a doctor owes patients in the medical treatment context. Also problematic for the Plaintiffs' argument is the fact that the Plaintiffs have not pointed this Court to any evidence that Attorney Sandoval even requested such documentation before the expiration of the statute of limitations. Hence, the Plaintiffs' equitable estoppel argument does not save the untimely FTCA claim.

## C.     Equitable Tolling

The Plaintiffs argue that the doctrine of equitable tolling applies such that the statute of limitations for the Plaintiffs' FTCA claim was tolled until their counsel, Attorney Sandoval, learned that Dr. Ramsey was a federal employee.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Credit Suisse Secs. (USA) LLC. v. Simmonds*, 566 U.S. 221, 227 (2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (emphasis omitted).

## 1. Diligence

The Plaintiffs offer several arguments to demonstrate that the Plaintiffs—in this instance meaning the Plaintiff's counsel, Attorney Sandoval—diligently pursued the malpractice claim. As evidence of their diligence in pursuing the claim, the Plaintiffs point to evidence that Attorney Sandoval examined the websites of Dr. Ramsey, NorthShore, Anonymous Hospital, the Indiana Secretary of State, and the U.S. Public Health Services. Sandoval Aff. ¶ 8. Attorney Sandoval attests: "None of these websites indicated at any time, to my knowledge, that Dr. Ramsey was an 'employee' of NorthShore, that he was a 'government' or federal employee, or that he could only be sued in federal court pursuant to the Federal Tort Claims Act ('FTCA')." *Id.* In his affidavit, Attorney Sandoval conceded that "although NorthShore's website listed [Dr. Ramsey] as a doctor, it did not list him as an employee." *Id.*

Again, the Court must reject the Plaintiffs' argument in light of Seventh Circuit case law. The Seventh Circuit noted in *Blanche* that "the Public Health Service operates a website that identifies all health centers that receive federal funds and thus can only be sued under the FTCA." *Blanche*, 811 F.3d at 962 (citing *Arteaga*, 711 F.3d at 834). Counsel for plaintiffs cannot claim they did know that they could only sue under the FTCA because "[m]embers of the medical malpractice bar should know enough to consult the [Public Health Services Website] when approached by a prospective client." *Arteaga*, 711 F.3d at 834. "Medical malpractice attorneys have an obligation upon being retained by a new client to research the possible defendants at issue. This research involves examining whether the possible defendants are federally affiliated, and thus can only be sued under the FTCA." *Blanche*, 811 F.3d at 962.

The fact that Attorney Sandoval could not determine that Dr. Ramsey was a federal employee only suable under the FTCA after researching the relevant websites, including the U.S.

Public Health Services website, does not demonstrate that the Plaintiff diligently pursued the malpractice claim. Attorney Sandoval attests that examining the websites in question did not enlighten him as to Dr. Ramsey's federal status. What is missing from Attorney Sandoval's affidavit is any evidence indicating whether his "research involve[d] examining whether the possible defendants are federally affiliated." *See Blanche*, 811 F.3d at 962. In other words, even if website research failed to alert Attorney Sandoval that Dr. Ramsey was only suable under the FTCA, there is still no evidence showing that Attorney Sandoval researched whether NorthShore, a possible defendant in the case, was federally affiliated by searching for it in the U.S. Public Health Services website.

This apparent oversight is relevant because it would stand to reason that if an attorney were to be diligently pursuing a malpractice claim then they would search the U.S. Public Health Services website to determine the possible federal status of a health center where the plaintiff received her prenatal care. After determining that the health center providing the prenatal care was federally affiliated (and therefore suable only under the FTCA), a diligent attorney would be tipped off to investigate the federal status of any doctor who provided the plaintiff prenatal treatment and delivered the baby.

If Attorney Sandoval had made the effort to determine whether NorthShore was federally affiliated by examining the U.S. Public Health Services website, instead of singularly focusing on whether Dr. Ramsey was federally affiliated by examining the U.S. Public Health Services website, Attorney Sandoval would find that NorthShore was federally affiliated. This information, coupled with Attorney Sandoval knowing that NorthShore's website listed Dr. Ramsey as a doctor at the health center, would have alerted Attorney Sandoval that Dr. Ramsey was possibly a federal employee suable only under the FTCA.

Relatedly, the Plaintiffs argue that Attorney Sandoval was unaware of NorthShore's federal status because the health center's website did not indicate that it was an "FTCA Deemed Facility." Aside from there being no evidence that Attorney Sandoval examined the U.S. Public Health Services website to determine specifically whether NorthShore was federally affiliated, NorthShore's website did include a logo that reads "Community Health Center FQHC" during the statute of limitations period. *See* Pls.' Ex. C at 3, ECF No. 26–3. In *Arteaga*, the Seventh Circuit found that the fact that the health center in question indicated it was a Federally Qualified Health Center on its website weighed against the plaintiff's argument that plaintiff's counsel could not have uncovered the federal status of the health center. *Arteaga*, 711 F.3d at 833–34. The court did not require that a federally funded health center indicate that it was covered under the FTCA to give plaintiffs notice that it was only suable under the FTCA. *Id.* at 834. Thus, NorthShore's website did not need to indicate that it was an "FTCA Deemed Facility." The inclusion of information indicating that NorthShore was an FQHC should have alerted an attorney diligently pursuing a malpractice claim that the health center was suable only under the FTCA.

### 2. *Extraordinary Circumstances*

The Plaintiffs assert that extraordinary circumstances prevented the Plaintiffs and their counsel from filing the FTCA claim within the limitations period—the second element of an equitable tolling defense. According to the Plaintiffs, the extraordinary circumstances preventing the filing of FTCA claim arose out of NorthShore and Dr. Ramsey "actively avoid[ing] participating in any way in the IDOI proceeding filed against Dr. Ramsey for approximately one year." Pls.' Resp. at 19. The Plaintiffs provide the following facts to bolster their claim. First, Dr. Ramsey testified at his deposition that that he "handed [ ] off" the original and amended

complaints filed with the IDOI to NorthShore. Pls.' Resp. at 19. Next, Dr. Ramsey admitted that he was instructed by the U.S. Attorney and NorthShore to do nothing with respect to the IDOI complaints filed against him. *Id.* Neither NorthShore nor Dr. Ramsey informed Attorney Sandoval of the true nature of Dr. Ramsey's employment, and if they had done so, the Plaintiffs could have filed their FTCA claim with DHHS within the statute of limitations period.

As explained above in the equitable estoppel section, healthcare providers such as NorthShore and Dr. Ramsey have no obligation or duty to provide the Plaintiffs' with information that will help their counsel select the correct forum in which to sue them. Although the Plaintiffs repeatedly emphasize how Dr. Ramsey did not participate in the IDOI proceeding, no evidence is presented to demonstrate that he, NorthShore, or their counsel violated any administrative or court rules or otherwise disobeyed some administrative or court order to disclose information or produce documents. Dr. Ramsey's nonparticipation, as the Plaintiffs' characterize it, in the IDOI proceeding cannot be a basis for this Court to find some extraordinary circumstance existed to prevent Plaintiffs or their counsel from filing their FTCA claim within the statutory period.

Therefore, because the Plaintiffs have not met the diligence and extraordinary circumstances elements, the Plaintiffs' FTCA claim filed after the limitations period is not saved by the doctrine of equitable tolling.

## CONCLUSION

For these reasons, the Court GRANTS the Defendant's Motion to Dismiss for Failure to State a Claim or Alternatively Summary Judgment [ECF No. 21]. The Court also DENIES the Plaintiffs' Motion for Hearing on the Defendant's Motion to Dismiss for Failure to State a Claim or Alternatively Summary Judgment [ECF No. 25]. Finding no just reason for delay, the Court

DIRECTS the Clerk of Court to ENTER JUDGMENT pursuant to Federal Rule of Civil

Procedure 54(b) in favor of Defendant the United States of America only and against the

Plaintiffs.

SO ORDERED on January 10, 2020.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT